*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. D. WILSON, Minor.

UNPUBLISHED
February 13, 2026
1:29 PM

No. 376996
Berrien Circuit Court
Family Division
LC No. 2023-000006-NA

Before: SWARTZLE, P.J., and MALDONADO and ACKERMAN, JJ.

PER CURIAM.

Respondent-father appeals the trial court's order terminating his parental rights to his minor child, CD, under MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions that led to adjudication) and (j) (reasonable likelihood of harm if child is returned to parent).[1] On appeal, he contends that the trial court clearly erred by finding that it was in CD's best interests to terminate his parental rights. We disagree and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case began when Berrien County Children's Protective Services (CPS) received a report on December 30, 2022, alleging that respondent was living with CD at a homeless shelter, was intoxicated, and left CD unsupervised. On December 31, 2022, CPS visited the shelter, and a breathalyzer test showed that respondent had a blood alcohol level of 0.178, which led to their eviction from the shelter. Subsequently, they stayed with a family friend, but respondent violated house rules by returning intoxicated, leading to another CPS report on January 6, 2023. On January 9, 2023, the Department of Health and Human Services (DHHS) petitioned the trial court for jurisdiction over CD, citing respondent's substance abuse and other issues. The court found reasonable cause to believe that CD was at risk and placed her in DHHS custody.

---

[1] The order also terminated the parental rights of CD's mother, but she is not a party to this appeal. All references to "respondent" are to respondent-father.

-1-

Throughout early 2023, respondent continued to test positive for substances, including THC and cocaine. At a pretrial hearing on March 2, 2023, respondent entered a no-contest plea to establish statutory grounds for the court exercising jurisdiction over CD. During a dispositional hearing later that month, a caseworker testified about CD's violent reactions after visits with her father, leading to an expedited child-trauma assessment. CD was diagnosed with post-traumatic stress disorder, and the court continued her placement with DHHS.

Respondent's participation in services waxed and waned thereafter, with periods of progress in service followed by regression and then renewal. By February 2024, respondent showed significant progress, leading to a court order for CD's return under DHHS supervision. In July 2024, however, new allegations of physical discipline arose, with CD reporting having been spanked with a belt. DHHS implemented a safety plan, but further investigation revealed that respondent had a history of sexual-assault allegations in Indiana. Despite efforts to address these issues, including working with Families Together Building Solutions, respondent faced eviction and employment challenges.

In December 2024, CD again reported being spanked with a belt and that respondent had resumed drinking. Respondent denied using a belt but admitted to "popping" CD. Petitioner filed a supplemental petition to remove CD and terminate parental rights, citing ongoing substance abuse and failure to prioritize CD's needs. At the emergency removal hearing, respondent pleaded not guilty to the allegations but admitted to drinking about three times per week. The trial court found probable cause to authorize the petition, noting respondent's resistance to services and failure to ensure CD's mental-health treatment, with CD having been discharged from therapy due to nonattendance. Despite a safety plan, CD continued to report physical abuse, leading to concerns for her safety. A DHHS worker also agreed when asked whether respondent had said that he had resumed drinking because "CPS is almost out of his life."

In the months that followed, little progress was made. CD had tantrums in foster care, and when asked whether she would have acted that way in respondent's presence, said she would not because he would "whoop" her. Providing therapy to CD became difficult after respondent raised objections to CD's therapist. As a result, the therapist recommended that CD transition to a different provider, and in the meantime, CD went without therapy. Respondent tested positive for cocaine and methamphetamine, but he insisted the test was a false positive. He also missed parenting-time visits with CD. After having quit two different jobs during these proceedings, he was subsisting on state assistance and donating blood plasma for income, although respondent insisted he was "doing fine" financially. This all led to petitioner filing a supplemental petition seeking termination of respondent's parental rights.

In July 2025, the trial court terminated respondent-father's parental rights, finding clear and convincing evidence under MCL 712A.19b(3)(c)(*i*) and (j). The court noted respondent-father's ongoing issues with alcohol, employment, and parenting skills, and determined that termination was in CD's best interests because of her need for permanency and stability. The court emphasized the trauma that CD experienced in being taken into DHHS custody more than once and the lack of progress in addressing the conditions that led to her removal, with these proceedings having lasted more than two and a half years as of the date of termination. Respondent now appeals.

## II. STANDARD OF REVIEW

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "[W]hether termination of parental rights is in the best interest of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's findings of fact are reviewed for clear error. *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made. *Id*.

## III. ANALYSIS

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012).[2] In assessing whether termination is in a child's best interests, the trial court should weigh all the evidence available to it and may consider factors including "the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *Id*. at 41-42 (citations omitted). Other considerations include the length of time the child was in care, the likelihood that the child could be returned to the parent in the foreseeable future, the parent's visitation history, the child's well-being while in care, and the possibility of adoption. *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). Although the child's "bond to the parent," *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868, 873 (2015) (citation omitted), is a factor for the trial court to consider when deciding whether termination is in a child's best interests, "[t]he strength of the children's bond [is] only one factor among many that the trial court" should consider, *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

Respondent's primary argument on appeal is that he had a genuine bond with CD and that it was therefore not in her best interests to terminate his rights. He also emphasizes that he had made progress in finding suitable housing and "was seeking employment." He objects that if foster homes are necessarily more affluent than parental homes, "then all poor people must start giving up their children to affluent foster parents." But the trial court took these facts into consideration in making its decision. It acknowledged that respondent and CD shared a bond and that respondent rectified the housing barrier. Nonetheless, the trial court found that respondent failed to rectify other service-plan requirements, including barriers related to transportation, employment, substance abuse, and mental health.

The trial court properly focused on CD during the best-interest determination. It noted that CD experienced trauma from the two removals from respondent's care and found that CD had trauma-related mental-health needs. Furthermore, the trial court found respondent's parenting

---

[2] Respondent-father concedes on appeal that DHHS has proven at least one statutory ground for termination, MCL 712A.19b(3)(c)(*i*). Because only one statutory ground is necessary to support the termination of parental rights, *In re Powers Minors*, 244 Mich App 111, 118; 624 NW2d 472 (2000), we need not examine the evidence to support the remaining ground for termination.

ability "very questionable" considering that he physically disciplined CD twice after reunification and continued abusing substances. The trial court also considered the length of time that CD had been in DHHS custody, noting that she had spent more time in care than she had with respondent. Taken together, the trial court considered all evidence available to it and found that the bond between respondent and CD was not enough to overcome the other factors and circumstances in this case. See *Olive/Metts*, 297 Mich App at 41-42. This was not clear error. See *HRC*, 286 Mich App at 459.

The trial court also did not make its best-interest determination based on financial status. It even explicitly found that "there's no advantage of the foster home" because "it's not a pre-adoptive home," which dispels respondent-father's argument. In an admitted court report, a foster-care caseworker stated that respondent-father quit his job, did not appear motivated to find a replacement job, and said that he was "doing fine" financially with just food stamps and plasma donation. The caseworker testified that respondent-father sustained his life by plasma donation and state assistance, which the caseworker did not believe was sufficient income to support CD because it did not leave room for "general funds necessary to raise a child." The trial court took this into consideration and informed respondent-father that "plasma donation is not a sustainable plan." On these facts, the trial court could properly find that plasma donation and food stamps failed to provide the "permanency, stability, and finality" that CD required. See *Gonzales/Martinez*, 310 Mich App at 434.

Although respondent-father claims that he had suitable housing and was seeking employment, neither the trial court nor CD was required "to await the mere possibility of a radical change" in respondent-father's behavior. *In re Williams*, 286 Mich App 253, 273; 779 NW2d 286 (2009). The evidence demonstrates that the trial court weighed financial factors in making its best-interest determination in addition to all factors available to it. See *Olive/Metts*, 297 Mich App at 41-42.

Respondent also observes that a significant percentage of Americans have issues with alcoholism, suggesting that this is not an adequate basis for terminating his rights. But such a suggestion does not engage with the controlling issue—CD's best interests—and in any event is belied by the record. The trial court did not make its best-interest determination based on respondent-father's alcoholism alone. Respondent-father's substance abuse was the most significant barrier to reunification, but the record demonstrated that the trial court considered all the evidence and many factors in making its best-interest determination.

Collectively, on this record a preponderance of the evidence established that it was in CD's best interests that the trial court terminate respondent-father's parental rights. See *Moss*, 301 Mich App at 90. We therefore conclude that the trial court did not clearly err when it found that terminating respondent-father's parental rights was in CD's best interests.

Affirmed.

/s/ Brock A. Swartzle
/s/ Allie Greenleaf Maldonado
/s/ Matthew S. Ackerman